# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PAUL GERMANO,
    *Plaintiff*,

    v.

COOK *et al.*,
    *Defendants*.

No. 3:21-cv-00550 (JAM)

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Paul Germano is a prisoner in the custody of the Connecticut Department of

Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. §

1983 primarily alleging that several DOC officials have engaged in mail tampering and retaliated

against him for filing lawsuits and grievances. Because Germano does not allege facts that

plausibly state a claim for which relief can be granted, I will dismiss the complaint without

prejudice.

### BACKGROUND

Germano names the following seven defendants in his complaint: Commissioner Cook,

Warden Hannah, Deputy Warden Borges, Counselor Supervisor Calderon, Colleen Gallagher,

Counselor Grievance Coordinator John Doe, and Mail Review Counselor John Doe. All

defendants are named in their individual and official capacities.[1]

The following facts are alleged in Germano's complaint and are accepted as true for

purposes of initial review only. The incidents underlying this action occurred while Germano

---

[1] Doc. #1 at 7 (¶ 1).

was incarcerated at Garner Correctional Institution ("Garner").[2]

Beginning in November 2017, Germano began filing numerous grievances concerning how he was injured while receiving medical treatment at Garner.[3] He received no responses to these grievances.[4] Between October and December 2018, he submitted numerous grievances and letters threatening litigation to "almost all" of the supervisory staff at Garner.[5]

In February 2019, Germano submitted a medical grievance to the custody grievance coordinator complaining that his medical grievances were being ignored.[6] He received a notice that the grievance was forwarded to the medical unit.[7] But still he received no response.[8]

Germano realized that the medical and custody grievance coordinators were becoming "agitated" about the "onslaught of paperwork in which it was clear that [Germano] was preparing to litigate."[9] Counselor Supervisor Calderon told Germano that he would look into Germano's complaint about how the grievance coordinator was refusing to respond to his grievances.[10]

In March 2019, Germano sent his mother a large amount of paperwork for pending legal cases he needed her to copy.[11] The documents included grievances, medical incident reports, emails, and psychological evaluations.[12] When Germano did not receive the copies his mother

---

[2] *Id.* at 9 (¶ 6). Germano has filed a separate pending action alleging deliberate indifference to his serious medical needs while at Garner. *See, e.g., Germano v. Cook*, 2020 WL 264763 (D. Conn. 2020).
[3] *Id.* at 11 (¶ 15).
[4] *Id.* at 11, 13 (¶¶ 15, 21).
[5] *Id.* at 14 (¶¶ 16, 19).
[6] *Id.* at 13 (¶ 21).
[7] *Ibid.*
[8] *Ibid.*
[9] *Id.* at 13 (¶ 22).
[10] *Id.* at 12 (¶ 23).
[11] *Ibid.* (¶ 24).
[12] *Ibid.* (¶ 25).

sent him, he wrote to the mail handler and all supervisors asking why he had not received his mail.[13] His mother also emailed the warden asking about his mail.[14] The mail handler told Germano that she had sent the box of documents to mail review for approval in early April 2019.[15]

While Germano was still making inquiries about the status of his box of documents, he was called to a meeting with medical supervisor Colleen Gallagher, Counselor Supervisor Calderon, and Grievance Coordinator Counselor Doe.[16] Gallagher was hostile to Germano, complaining about the volume of medical grievances Germano had filed.[17] She pointed to a large pile of about a dozen manila envelopes and told Germano that every time he writes to his doctors, "this ends up on my desk and I have to deal with this crap."[18] Although Gallagher said that she was there to resolve his issues, she would not permit Germano to speak, had a "rude demeanor," and excused the actions of the staff.[19]

Germano told Gallagher that if she and her staff were going to deny him medical treatment, he would address the denial of treatment in federal court.[20] He told Counselor Supervisor Calderon and the grievance coordinator that he was waiting for a box of legal work from his mother so that he could work on his litigation.[21] The defendants at the meeting did not

---

[13] *Id.* at 10, 15 (¶¶ 26, 28-29).
[14] *Ibid.*
[15] *Id.* at 10 (¶ 27).
[16] *Id.* at 15 (¶ 31).
[17] *Id.* at 16 (¶¶ 32-33).
[18] *Ibid.* (¶ 32).
[19] *Id.* at 16 (¶¶ 34-35).
[20] *Id.* at 17 (¶ 36).
[21] *Ibid.*

seem "please[d]" by Germano's comments about litigation.[22]

On April 29, 2019, Germano received the box of documents.[23] Attached to the box was a sticky note stating: "Fine he can get it."[24] Copies of two psychological evaluations were missing from the box.[25]

Later that day, Germano was called to the A/P room.[26] Upon seeing Germano, one officer said, "Here's the troublemaker."[27] When Germano questioned the remark, the officer asked, "why are you being such a pain in the ass to everybody?"[28] Germano was placed in a cell, given a cup, and told that he had been called for a random urine test.[29] Germano does not believe that he was called for a random test because he was given only one urine test during his prior 14 years of incarceration.[30] Although he immediately provided the sample, Germano was kept in the A/P room for three hours.[31]

On April 30, 2019, Warden Hannah, Deputy Warden Borges, and Unit Manager Hughes came to Germano's housing unit.[32] Deputy Warden Borges seemed angry with Germano, and "scorned him" for his grievances and his mother's emails.[33] Germano responded that he had a right both to litigate and to complain as much as he wanted about the delay in the delivery of his

---

[22] *Ibid.* (¶ 37).
[23] *Id.* at 19 (¶ 43).
[24] *Ibid.*
[25] *Ibid.* (¶ 44).
[26] *Id.* at 20 (¶ 46).
[27] *Ibid.* (¶ 47).
[28] *Ibid.*
[29] *Ibid.* (¶ 49).
[30] *Ibid.* (¶ 50).
[31] *Ibid.* (¶ 51).
[32] *Id.* at 21 (¶ 52).
[33] *Ibid.* (¶ 54).

documents.[34] Deputy Warden Borges told Germano that she was "tired of having all your shit on my desk" and instructed Germano to bring his concerns to the unit manager in the future.[35]

Nearly two years later, Germano filed this federal court complaint on April 21, 2021. The complaint alleges claims of conspiracy, First Amendment interference with his mail, First Amendment retaliation, supervisory liability, and due process against all the named defendants.[36] Germano seeks money damages and declaratory relief.[37]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).[38]

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[34] *Ibid.*
[35] *Ibid.* (¶ 55).
[36] *Id.* at 1 (¶ 2).
[37] *Id.* at 27 (¶ 72).
[38] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

(2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se*

complaint may not survive dismissal if its factual allegations do not meet the basis plausibility

standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Official capacity claims and declaratory relief*

Germano has sued all defendants in their individual capacities for damages as well as a

declaratory judgment that the defendants violated his constitutional rights. State officials sued in their

official capacities under 42 U.S.C. § 1983 are immune from suit for damages pursuant to the

Eleventh Amendment. *See Pennhurst State Sch. & Hops. v. Halderman*, 465 U.S. 89, 100-02 (1984);

*Davis v. New York*, 316 F.3d 93 101 (2d Cir. 2002). Likewise, they are immune from declaratory

relief to the extent a declaration is sought that they have previously violated the law. *See Puerto Rico*

*Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Accordingly, I will

dismiss the official capacity claims for damages and for declaratory judgment.

### *Conspiracy*

Germano alleges that the defendants conspired to retaliate against him by disrupting and

delaying his mail.[39] But his allegations of a conspiracy among these defendants are conclusory,

and "complaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). Furthermore, his

claim is foreclosed by the rule—known as the "intracorporate conspiracy" doctrine—that

members of the same organization may not be held liable for conspiracy under federal civil

---

[39] Doc. #1 at 11-13, 20, 23 (¶¶ 36-38, 40, 42-43, 47, 60).

rights law. *See Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018); *Dupigny v. Hannah*, 2021 WL 151043, at \*4 (D. Conn. 2021); *Dowd v. DeMarco*, 314 F.Supp.3d 576, 587 (S.D.N.Y. 2018). Accordingly, I will dismiss Germano's conspiracy claim.

### *First Amendment interference with mail*

Germano alleges that the defendants violated his First Amendment rights by delaying the delivery of his box of documents and removing the psychological reports.[40] It is well established that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). To establish a claim for mail tampering in violation of the First Amendment, an inmate must establish "that prison officials regularly and unjustifiably interfered" with his or her mail. *Ibid.* (noting that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received"). By contrast, the Second Circuit has found that an isolated incident of mail tampering does not ordinarily violate the First Amendment. *Ibid.* And "mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Id.* at 352.

Here, Germano alleges a delay in receiving a box of mail and that two psychological reports were removed from the box, which his mother later sent him again. He does not allege that the interference with his mail constituted an ongoing pattern or practice or that it prejudiced

---

[40] Doc. #1 at 10, 24 (¶¶ 28, 65).

his legal actions beyond a slight delay. Thus, he fails to state a cognizable claim for mail tampering. *See Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (absent interference with right of access to the courts, single incident of mail tampering insufficient to state constitutional violation); *see also Acevedo v. Fischer*, 2014 WL 5015470, at *12 (S.D.N.Y. 2014) (allegation that defendant read and discarded prisoner's letter on one occasion not enough to support First Amendment mail tampering claim). Accordingly, I will dismiss Germano's First Amendment mail tampering claim.

### First amendment retaliation

Germano alleges that the defendants violated his First Amendment rights by retaliating against him because he filed grievances and complaints and threatens litigation.[41] Of course, a prisoner has a right that is protected under the First Amendment to complain about prison conditions and file grievances. *See Brandon v. Kintner*, 938 F.3d 21, 40 (2d Cir. 2019); *Gomez v. Dep't of Corr.*, 2020 WL 6526108, at *3 (D. Conn. 2020). But the Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.*

---

[41] Doc. #1 at 15, 17 (¶¶ 30, 36).

"To establish a First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon*, 938 F.3d at 40. An "adverse action" is one of sufficient magnitude that it would deter a person of ordinary firmness from engaging in the protected activity. *Ibid.*

Germano alleges four acts of retaliation. I will address each in turn.

First, Germano alleges that "several officers" called him a "troublemaker" and a "pain in the ass." [42] Such offhand and insulting remarks would not deter a prisoner of ordinary firmness from complaining about prison conditions and therefore do not rise to the level of an adverse action for purposes of a First Amendment retaliation claim. *See Davis*, 320 F.3d at 353; *see also Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (defendant's alleged statement about there being "no secrets in prison" and that plaintiff would "have to pay the consequences" for filing a grievance against the defendant was not an adverse action).

Second, Germano alleges that the same officers who called him names asked him to provide a urine sample as part of a random urine test and then kept him in the A/P room for three hours even though he promptly provided a sample. [43] Germano alleges that the urine test was retaliation because it occurred shortly after he received his package of mail, because the staff instructing him to give him the sample expressed annoyance with him, and because he has never

---

[42] Doc. #1 at 20 (¶ 46-51).
[43] Doc. #1 at 20 (¶ 46-51).

had to provide urine as part of a random test in 14 years of incarceration.[44] These facts do not plausibly suggest a causal connection between his complaints and the action taken. Nor does requiring a prisoner to take a urine test rise to the level of an adverse action for purposes of a First Amendment retaliation claim. *See, e.g., Burgos v. Canino,* 358 F. App'x 302, 306 (3d Cir. 2009); *Yunus v. Jones,* 2017 WL 9511176, at *11 (N.D.N.Y. 2017).

Third, Germano alleges that mental health staff retaliated against him by threatening to place him with a cellmate. Because none of the named defendants are mental health staff, I will dismiss this claim.

Finally, Germano alleges that Gallagher, Calderon, and Counselor Doe retaliated against him by delaying receipt of his box of documents. He bases this conclusion on the fact that he mentioned in a meeting with them that he was waiting for a box of documents. He also believes that the note on the box stating "Fine he can get it" suggests retaliation.

These allegations are not enough to support a plausible claim for First Amendment retaliation. Germano does not allege that Gallagher, Calderon, and Counselor Doe did or said anything at the meeting suggesting that they had delayed his documents. Nor does he allege facts to suggest that they wrote the note stating "Fine he can get it." Indeed, the note itself suggests an intent for Germano to *receive* the documents, not to *deny* him the documents. Accordingly, I will dismiss Germano's First Amendment retaliation claim.

### Supervisory liability

Germano alleges that Commissioner Cook, Warden Hannah, and Deputy Warden Borges

---

[44] *Ibid.* (¶¶ 46, 50).

are liable under a theory of supervisory liability for tampering with his mail.[45] "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The Second Circuit has clarified that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Thus, a prisoner who seeks to hold a prison supervisor liable for a constitutional violation must establish that the supervisor's "own conduct" violated the prisoner's rights, "not by reasons of [the supervisor's] supervision of others who committed the violation." *Id.* at 619.

Germano concedes that the supervisory defendants were not involved in tampering with his mail.[46] Instead, he faults them for not doing enough after he complained "to punish the actual offenders so this would not happen again."[47] But absent allegations of an ongoing violation of a prisoner's constitutional rights, such allegations that supervisors did not do enough *after* a constitutional violation has already occurred is not enough to show personal involvement of the supervisors in the violation of a prisoner's constitutional rights. *See Tangreti*, 983 F.3d at 616-19; *Lopez v. Chappius*, 2021 WL 859384, at *2 (W.D.N.Y. 2021) (noting that it is "well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged" and that

---

[45] Doc. #1 at 26 (¶ 69).
[46] *Ibid.*
[47] *Ibid.*

"the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement of a supervisor in the denial of a constitutional right"). Accordingly, I will dismiss Germano's supervisory liability claim.

### *Due process*

Germano generally alleges a denial of due process but does not elaborate on the claim.[48] To the extent that Germano alleges that the failure to respond to his grievances is a denial of due process, the Constitution does not require that state prison officials comply with their own internal administrative procedures or that supervisory officials take steps to correct improper processing of prisoner grievances. *See, e.g., Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018); *Green v. Martin*, 224 F. Supp. 3d 154, 170 (D. Conn. 2016). Accordingly, I will dismiss Germano's due process claim.

### CONCLUSION

For the reasons set forth above, the Court DISMISES the complaint without prejudice pursuant to 28 U.S.C. § 1915A.

The Clerk of Court shall close this case. If Germano is able to allege additional facts that show valid grounds to proceed under federal law against any defendant, he may file a motion to reopen this action along with an amended complaint by August 6, 2021. It is so ordered.

Dated at New Haven this 6th day of July 2021.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[48] Doc. #1 at 7 (¶ 2).